UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PORTER CAPITAL CORP.,**  <br><br>    **Plaintiff,**  <br><br> v.  <br><br> **DIGITAL CONSULTING, INC.** <br>**d/b/a/ EPIPHANY, a/d/b/a** <br>**EPIPHANY VIDEO NETWORK,** <br>**a/d/b/a EPHIPANY STUDIOS;** <br>**DIGITAL CONTENT, LLC;** <br>**ADSYMBIOT, LLC; TECHMATE,** <br>**LLC d/b/a TECHMATE DIGITAL;** <br>**JOSEPH SALVADOR; BRIAN** <br>**ALLEN,** <br><br>    **Defendants.** | Case No.:  2:19-cv-00162-MHH |

## MEMORANDUM OPINION AND ORDER

Porter Capital Corporation has moved for default judgment against TechMate, LLC. (Doc. 52). On December 27, 2018, Porter Capital sued six defendants, including TechMate, in Alabama state court. (Doc. 1-1, p. 2). Porter Capital alleged breach of contract, breach of validity guaranties, fraudulent misrepresentation, and

1

fraudulent suppression claims against the defendants. (Doc. 1-1, pp. 2–6). On January 30, 2019, several defendants removed this lawsuit to federal court. (Doc. 1, p. 1). Porter Capital filed an amended complaint. In its amended complaint, Porter Capital asserts claims against TechMate for breach of contract, fraudulent misrepresentation, and fraudulent suppression. (Doc. 23, pp. 8–13).

On July 22, 2020, the Clerk issued an alias summons to TechMate, (Doc. 46), and on July 31, 2020 the Court received a United States Postal Service return receipt showing that TechMate received service of process on July 25, 2020. (Doc. 47). On November 5, 2020, Porter Capital moved for entry of default and default judgment against TechMate. (Doc. 52). The Clerk made an entry of default against TechMate on November 6, 2020. (Doc. 53). Porter Capital has filed affidavits describing the damages sought, an affidavit supporting the attorney's fees sought, and a copy of the contract between Porter Capital and TechMate. (Docs. 52-1, 52-2, 52-3, 52-4, 52-5). For the reasons below, the Court grants Porter Capital's motion and enters default judgment against TechMate LLC.

### I. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, as in this case, the clerk of court may enter a clerk's default. FED. R. CIV. P. 55(a). Second, after entry of the clerk's default, if the

defendant is not an infant or incompetent person, a district court may enter a default judgment against the defendant because of the defendant's failure to appear or defend. FED. R. CIV. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

"A motion for default judgment is not granted as a matter of right." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted). After a clerk enters a default under Rule 55(a), a district court must review the sufficiency of the complaint and its underlying substantive merits to determine whether a moving party is entitled to default judgment. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). A court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the relief sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

In addition to the pleadings, a district court may consider evidence presented in the form of an affidavit or declaration. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).

## II. FACTUAL ALLEGATIONS

Porter Capital entered into a "Recourse Receivables Purchase & Security Agreement" with Digital Consulting in July 2015. (Doc. 23, p. 3, ¶ 12).[1] The agreement allowed Digital Consulting to sell certain accounts receivable to Porter Capital. (Doc. 23, p. 3, ¶ 13). Between 2015 and 2018, Digital sold approximately 120 to 160 accounts receivable to Porter Capital. (Doc. 23, p. 3, ¶ 14). Several amendments to the agreement added new sellers. (Doc. 23, p. 4, ¶ 19). TechMate became a seller in the "third amendment" signed on May 16, 2017. (Doc. 23, p. 5, ¶¶ 24–25; Doc. 52-4, p. 13).

The agreement required TechMate "to maintain a Required Reserve Account with a specified minimum balance with Porter." (Doc. 23, p. 6, ¶ 30). If that balance fell below a set minimum, then TechMate had to immediately add funds to the account to reach the minimum balance. (Doc. 23, p. 6, ¶ 31). If Porter Capital bought accounts receivable that it later discovered were ineligible, as defined by the agreement, then the agreement required TechMate to repurchase them at Porter

---

[1] Porter Capital and all the defendants (Digital Consulting, Inc.; Digital Content, LLC; AdSymbiot, LLC; Joseph Salvador; and Brian Allen) except TechMate filed a joint stipulation of dismissal, and the Court ordered Porter Capital's claims against those defendants dismissed with prejudice. (Docs. 43, 44). The only remaining defendant is TechMate.

Throughout the operative complaint, Porter Capital refers to the defendants collectively as the "Epiphany Companies." For the purposes of this memorandum opinion and order, the Court refers to TechMate individually.

Capital's request. (Doc. 23, p. 6, ¶ 32). Porter Capital could then deduct the repurchase price from the Required Reserve Account. (Doc. 23, p. 6, ¶ 33).

When Porter Capital discovered some accounts that it had purchased were ineligible, it demanded that TechMate repurchase them and make the required payments to replenish the Required Reserve Account. (Doc. 23, p. 7, ¶¶ 36–37). Porter Capital alleges that TechMate failed to do so. (Doc. 23, p. 7, ¶ 37).

Porter Capital also alleges that TechMate made fraudulent misrepresentations and fraudulently suppressed information about certain accounts it sold. TechMate had agreements with certain advertising companies through which TechMate would sell lists of websites to Yahoo and AOL to use as leads for advertising. (Doc. 23, p. 8, ¶ 43). TechMate would then sell the advertising companies' invoices to Porter Capital as accounts receivable. (Doc. 23, p. 8, ¶ 45). Porter Capital paid TechMate based on the face amount of the invoices, but TechMate's agreement with the advertising companies gave the advertising companies the right to offset the face amounts on these invoices. (Doc. 23, p. 9, ¶¶ 47, 50). Despite a written representation to the contrary, and a contractual warranty prohibiting offsets, each advertising company invoice TechMate sold to Porter Capital was subject to this right to offset, reducing the invoice's value to Porter Capital. (Doc. 23, p. 10, ¶¶ 52–53, 56).

### III. DISCUSSION

#### a) Subject Matter Jurisdiction

Before a district court may enter a default judgment, the court must confirm that it has subject matter jurisdiction. *Smarter Every Day, LLC v. Nunez*, No. 15-1358, 2017 WL 1247500, at *2 (N.D. Ala. Apr. 5, 2017) (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)). Porter Capital contends the Court has diversity jurisdiction to hear this case under 28 U.S.C. § 1332. (Doc. 23, p. 2, ¶ 11). In its complaint, Porter Capital claims the defendants, including TechMate, jointly and severally owe $161,306.15. (Doc. 23, p. 8, ¶ 41). Based on this factual allegation, the Court is satisfied more than $75,000 is in controversy.

As to the requirement of complete diversity between the parties, Porter Capital alleges that the defendants are citizens of Colorado, Texas, and Nevada. (Doc. 23, pp. 1–2, ¶¶ 2–11). TechMate is a Nevada limited liability company, and Porter Capital alleges that TechMate's members are citizens of Nevada. (Doc. 23, p. 2, ¶¶ 7–8). Porter Capital alleges it is a corporation formed under the laws of Alabama, and its principal place of business is in Alabama. (Doc. 23, p. 1, ¶ 1). The Court is satisfied the parties are completely diverse, and the Court has subject matter jurisdiction.

### b) Personal Jurisdiction

The Court also must determine whether it has personal jurisdiction over TechMate. *Oldfield v. Pueblo Da Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). The Supreme Court has noted that "the personal jurisdiction requirement is a waivable right" subject to "express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Here, the agreement at issue contains a "Legal Action" clause which states:

> Any action between the Parties shall, if Purchaser so elects, be instituted in the federal or state court located in Jefferson County, Alabama (the "Acceptable Forum"). Each party irrevocably submits to the jurisdiction of the Acceptable Forum, and waives all attempts to transfer to any other forums. Should any action be initiated in any other forum, Seller shall not oppose any attempt to have the action transferred to the Acceptable Forum.

(Doc. 52-4, p. 8, ¶ 22). This forum selection clause, like all other provisions in the agreement, became applicable to TechMate when it signed the Third Amendment and agreed that it would "perform every act and obligation[] of a Seller under the terms of the Agreement in the same manner and with the same effect as though they were included within the definition of Seller in the preamble of the Agreement and had originally joined in the execution thereof." (Doc. 52-4, p. 11, ¶ 1). Accordingly, TechMate consented to the personal jurisdiction of this Court.

### c) TechMate's Liability

Porter Capital brings three claims against TechMate: breach of contract, fraudulent misrepresentation, and fraudulent suppression. (Doc. 23, pp. 6–13, ¶¶ 29–7). The Court addresses each claim in turn.

#### i. *Breach of Contract*

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). "Alabama applies the traditional doctrines of *lex loci contractus* to contract claims . . . . Th[is] doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (internal quotations omitted). Here, the parties agreed that "[t]his Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of Alabama." (Doc. 52-4, p. 8, ¶ 20). Because the parties' included a valid choice of law provision in the agreement, the Court will apply Alabama law.

Under Alabama law, a breach of contract claim requires the plaintiff to plausibly demonstrate "[1] the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's

8

nonperformance, and (4) damages." *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (internal citations and quotation marks omitted). In support of its motion for default judgment, Porter Capital provided a copy of the 2015 agreement and the 2017 Third Amendment adding TechMate as a party to the agreement. (Doc. 52-4). Porter Capital sufficiently demonstrated the existence of a contract between Porter Capital and TechMate.

In relevant part, the agreement between the parties obligated TechMate to repay all obligations owed under the agreement in the event of default. (Doc. 23, p. 8, ¶ 39; Doc. 52-4, p. 7, ¶ 11.2). Porter Capital alleges that when it discovered several accounts it purchased from TechMate were ineligible under the agreement, it demanded TechMate repurchase the ineligible accounts and replenish the Required Reserve Account and that TechMate failed to do so. (Doc. 23, p. 7, ¶¶ 36–37). This was an event of default, which meant that TechMate needed to repay obligations under the agreement, but it failed to do so. (Doc. 23, p. 7, ¶¶ 39–40). Porter Capital's purchase of the ineligible accounts constituted its performance under the agreement, and TechMate's failure to repay obligations after the event of default constituted its nonperformance. TechMate's nonperformance damaged Porter Capital. (Doc. 23, p. 8, ¶ 41). Accordingly, Porter Capital is entitled to default judgment on its breach of contract claim against TechMate.

> *ii.     Fraudulent Misrepresentation*

"Alabama continues to follow the traditional view of the *Restatement (First) of Conflicts of Law*, as discussed in *Fitts v. Minnesota Min. & Mfg. Co.*, [581 So. 2d 819, 820 (Ala. 1991)], which looks to the *lex loci delicti* in tort claims, 'in the state where the last event necessary to make an actor liable for an alleged tort takes place.'" *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014) (quoting *Restatement (First) of Conflict of Laws* § 377 (1934)). "[B]ecause Alabama applies the rule of *lex loci delicti*, 'it is not the site of the alleged tortious act that is relevant, but the site of the injury or the site of the event that created the right to sue.'" *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d at 1071 (quoting *Glass v. Southern Wrecker Sales*, 990 F. Supp. 1344, 1347 (M.D. Ala. 1998)). Because Porter Capital has its principal place of business in Alabama, it appears that the company was injured in Alabama. Therefore, the Court will apply Alabama law to Porter Capital's tort claims.

Under Alabama law, "[t]he elements of a fraudulent-misrepresentation claim are: '(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate cause of the misrepresentation.'" *Sexton v. Bass Comfort Control, Inc.*, 63 So. 3d 656, 662 (Ala. Civ. App. 2010) (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)).

Porter Capital's fraudulent misrepresentation claim stems from TechMate's sale of accounts receivable that were subject to offsets. With every account sale, TechMate executed a transmittal form, and these forms "represented that the Accounts being offered for sale to Porter were valid, collectable, and not subject to any offsets." (Doc. 23, p. 9, ¶ 49).

In reality, Porter Capital alleges, these accounts were subject to offsets. (Doc. 23, p. 9, ¶ 50). So, "[d]espite their written representations to the contrary, each of the Offset Accounts Defendants sold to Porter were subject to the Advertising Companies' right to offset." (Doc. 23, p. 10, ¶ 52). TechMate's representations that the accounts were not subject to offsets, which reduced the accounts' value, is both a false representation and a material existing fact.

Porter Capital reasonably relied on the transmittal forms. In Alabama, "[r]eliance requires that the misrepresentation actually induced the injured party to change its course of action." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004). Porter Capital explains that "[t]he representations that the Offset Accounts were not subject to offset induced Porter to purchase the Offset Accounts" and that Porter Capital "relied on Defendants' written representations that the Offset Accounts were not subject to offsets in evaluating [whether] to purchase the Accounts . . . and in calculating the purchase price." (Doc. 23, p. 10, ¶¶ 54–55). Because of the misrepresentations about the accounts being subject to offsets,

11

"Porter purchased the Offset Accounts even though they were worth less than their face amounts." (Doc. 23, p. 10, ¶ 56). Porter Capital has sufficiently demonstrated that it reasonably relied on TechMate's misrepresentation when it decided to purchase the offset accounts and decided how much to pay for the offset accounts.

TechMate's misrepresentations damaged Porter Capital because Porter Capital purchased accounts that "were in fact not valid, were not fully collectible, and were subject to offset." (Doc. 23, p. 11, ¶ 58). Accordingly, Porter Capital is entitled to default judgment on its fraudulent misrepresentation claim.

### iii.   Fraudulent Suppression

Under Alabama law, "[t]he elements of a claim of fraudulent suppression are: '(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury.'" *Sexton*, 63 So. 3d at 662 (quoting *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010)). "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud.  The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." ALA. CODE § 6-1-102 (1975). "A plaintiff may also recover for fraudulent concealment by showing active concealment of a material fact with an intent to deceive or mislead." *Alabama Treatment, LLC v. Waste Alliance, Inc.*, No. 1:17-cv-733-SMD, 2020 WL 3271991,

12

at *5 (M.D. Ala. June 17, 2020) (citing ALA. CODE § 6-5-103 (1975); *Harrell v. Dodson*, 398 So. 2d 272, 276 (Ala. 1981)).

Under the circumstances of this agreement, TechMate had a duty to disclose to Porter Capital the existence of offsets in the offset accounts. The agreement provides a warranty that the purchased accounts "are bona fide existing obligations without adjustment, claims, defenses, disputes or rights to setoff or cancellation . . . ." (Doc. 52-4, p. 7, ¶ 10). TechMate's warranty that the accounts are not subject to offsets appears, on its own, to create a duty to disclose the existence of offsets. The agreement's warranty provision coupled with the transmittal forms (which reaffirm that every transaction is in accordance with the agreement) sufficiently establish TechMate's duty to disclose the fact that the offset accounts were subject to offset.

TechMate consistently failed to disclose, or concealed the fact, that the accounts it offered for sale to Porter Capital were subject to offsets. (Doc. 23, p. 12, ¶¶ 66–67). Porter Capital has explained that if it had known that the accounts were subject to offset, it would not have purchased the accounts because "they were actually worth less than their face amount." (Doc. 23, p. 12, ¶¶ 68–69). Accordingly, Porter Capital is entitled to default judgment on its fraudulent suppression claim.

### d) Damages

When assessing damages, a district court must "assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). An evidentiary hearing may be required to determine the amount of damages, but if the record is sufficient, then a district court may determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

To support the damages Porter Capital seeks, Kate Smith, Porter Capital's Vice President of Operations, states in an affidavit that the current outstanding principal balance due on the obligation is $35,653.77, plus a minimum term fee in the amount of $88,427.91, for a total principal balance of $124,081.68. (Doc. 52-3, p. 4, ¶ 8; Doc. 52-5, p. 2). Attorney Jonathan Raulston's affidavit explains that Porter Capital has received $9,999.98 in proceeds from other defendants, and that amount should be credited against the balance. (Doc. 52-1, p. 4, ¶ 10). This brings the total principal Porter Capital seeks to recover to $114,081.70.

Porter Capital also seeks $37,224.47 in attorney's fees. (Doc. 52-1, p. 4, ¶ 9; Doc. 52-3, p. 4, ¶ 9). The agreement provides that TechMate is "obligated to pay to Purchaser all of Purchaser's reasonable attorneys' fees, legal costs and expenses, collection, prosecution or defense costs, travel expenses, and other reasonable expenses incurred by Purchaser in connection with this Agreement or in connection with enforcing Purchaser's rights hereunder, or in connection with being involved in a legal action related hereto, or in responding to legal process concerning Seller or any Account purchased hereunder . . . ." (Doc. 52-4, p. 8, ¶ 18). The agreement does not include a cap on attorneys' fees, so Porter Capital is entitled to recover these fees.

## IV. CONCLUSION

For the reasons above, the Court grants Porter Capital Corporation's motion for default judgment against TechMate, LLC and awards damages in the amount of $114,081.70 and attorney fees in the amount of $37,224.47. (Doc. 52).[2]

**DONE** and **ORDERED** this April 14, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[2] The $114,081.70 accounts for the $9,999.98 credit that Porter Capital reported in its affidavit. (*See* Doc. 52-1, p. 4).